## HARRISON MACHINE WORKS
### v.
## N. J. MILLER.

*Replevin—Sale of Threshing Machine—Conditions Precedent—Unauthorized Delivery—Agency—Rescission of Contract.*

1. An action of replevin lies to recover a threshing machine, the sale of which has not been consummated because of a failure of the vendee to give the agreed security for the purchase money, the delivery of possession having been unauthorized.

2. Where a contract of sale requires the vendee to give security as a condition precedent, the vendor may rescind the contract upon his failure to perform in this respect.

[Opinion filed January 10, 1889.]

APPEAL from the Circuit Court of Perry County; the Hon. AMOS WATTS, Judge, presiding.

Appellant brought replevin to recover from appellee a threshing machine outfit. A trial was had; the jury found for defendant and a judgment on the verdict was entered, to reverse which this appeal was taken. It appears appellee desired to buy a threshing machine and informed one Bischof or Bishop, at Du Quoin, about June 1, 1886, he was about to telegraph to appellant at Belleville for a machine, but Bishop asked appellee to let him telegraph, so he could make a commission. Appellee consenting, Bishop sent telegram to appellant, in response to which appellant sent Sproul as its agent, who, as such agent, and known by Miller to be such, interviewed the latter concerning his property, and the latter stated he owned personal property of considerable value, among which were seventy acres of wheat; that this property was mortgaged to one Dearing to secure about $500, but the wheat would pay that debt, and agreed to give appellant a mortgage upon all the property described in the Dearing mortgages, and upon the threshing machine outfit to secure the purchase price of the latter, and pay off Dearing with the proceeds of the sale of the wheat, thus giving appellant a first lien on the other mortgaged property. Relying on these statements and promises of appellee, Sproul made out and sent to appellant on June 3d an order from Miller for the outfit, conditioned that a mortgage upon it and all the property, as above mentioned, should be given by appellee to secure the purchase money, and if the order was accepted the outfit was to be delivered to him at Du Quoin on or about June 20, 1886, or

as soon thereafter as transportation could be obtained. In the order the valuation of the property mortgaged to Dearing was stated to be $1,200. On June 5th appellant wrote Bishop that the order forwarded by Sproul had been received, and, after duly considering the points and particulars, was accepted, and hoping Bishop would assist in getting the *settlement* in good shape, as appellant could not afford to *accept doubtful paper;* also stating Sproul made a mistake in filling out notes for $100 less than the price of outfit. To this Bishop replied June 7th that the $100 would be all right and to send him the notes; he would see Miller next day, have the notes fixed up and the mortgage *all right;* that appellant should fill out notes and he, Bishop, would have mortgage fixed to suit, and requested appellant to have the outfit at Du Quoin by Thursday, *so that he could show it on the streets* Saturday, adding he would write again next day. On June 8th a reply to this from appellant was received by Bishop, stating the correction had been made in notes, that the mortgage had been filled out so far as describing the outfit, but that Bishop *must get an accurate description of all the other property, include it, examine the mortgage closely and see that all is right;* also stating the outfit would be shipped next day, so that Bishop *could exhibit it on Saturday.* On June 9th the outfit was shipped to Bishop and arrived the evening of that day, and he claims to have delivered it on its arrival to appellee, but it remained in Du Quoin until June 19th, on the premises of Bishop. On June 18th Spring, an agent for appellant, called on Bishop and notified him that investigation had shown the property mortgaged was not of the value represented, and that appellant could not accept Miller's order, and that the outfit must not be delivered to Miller. On June 19th Bishop told Miller that he was ordered on behalf of appellant not to deliver him the outfit; that they wanted better security; but Miller on the same day took the property in controversy away, out to his farm, and on the 21st day of June Spring and Sproul, agents for appellant, went there and demanded of appellee the property he took, at the same time tendering him his notes, freight money advanced, money paid by him for lumber—in

short, offering to place him in *statu quo*. Miller refused to deliver the property thus demanded but claimed it as the owner.

Mr. R. W. S. WHEATLEY, for appellant.

Messrs. R. N. DAVIS and T. T. FOUNTAIN, for appellee.

GREEN, P. J. Concerning the property in controversy in this case no rights of third persons as purchasers or creditors are involved, but appellee claims said property as appellant's vendee, and appellant denies that a sale and a delivery thereof was ever consummated, but insists appellee failed to perform certain conditions precedent, necessary to complete the contract of sale, by not giving security for the purchase money as by the terms of his order he had agreed to; that he also made false representations to Sproul, the agent of appellant, as to the value of the property he was to mortgage to secure the purchase money, and upon discovering these facts appellant at once caused appellee to be notified thereof, and that it forbade the delivery to him of the property in question, but nevertheless, afterward, appellee did take it and remove it, wrongfully and unlawfully, from the possession of Bishop, and refused to return it to appellant when return thereof was lawfully demanded.

The real character of this contract of sale is quite apparent. Miller wished to buy the threshing machine outfit entirely on credit. Appellant was willing to give the credit, but demanded security, and on something besides the outfit. Appellee was to furnish this security, and, from the terms of the written order, the letters of appellant to Bishop and the other facts and circumstances proven, it appears to us that as a condition precedent to the completion of the sale appellee was to secure the purchase price of said property by giving a mortgage which should become a first lien not only on the outfit but also on all the property described in the Dearing mortgages except the wheat, and the fact is undisputed that he had failed to comply with this condition at the time he

took the property in question, and up to and at the time he refused to return the same to the agent of appellant, and never offered to perform it, and a delivery of the possession of said property to appellee by Bishop on the 9th of June, before the conditions of the sale were complied with on the part of appellee, was wholly unauthorized by appellant. The property was sent to Bishop at his request to be exhibited and not for delivery. He was directed to get an accurate description of the property intended by the parties to be mortgaged, and include it in the mortgage to be executed by appellee, and agreed to have the mortgage all right. Appellee did not deal with Bishop as the agent of appellant, but with Sproul; and if he chose to accept the property from Bishop without having complied with the conditions of the sale and without informing himself what authority Bishop had from appellant to deliver the property, he did so at his peril and acquired no right or title by such unlawful possession in or to said property. We are of opinion that appellant had the right to rescind the contract of sale, because appellee did not pay off the mortgage debt to Dearing and thereby enable himself to furnish appellant with a first lien on the other mortgaged property, and did not include all the property described in the Dearing mortgages in the mortgage he gave appellant, and did not comply with his agreement by giving or offering to give the required security. The rules of law applicable to the facts disclosed by this record sustain appellant's right to recover the property in question. Ordinarily where the contract requires successive steps to be taken by the respective parties, if, when a step becomes due, the party to take it, either in words or by their equivalent in acts, declines to take it, or is unable, while the other is ready and willing to do his part, the latter may rescind the contract. Bishop on Contracts, Ed. 1887, Sec. 826, *et seq.* The appellant had the right to rescind the contract if appellee failed to perform the condition of sale. Allen v. Ford, 19 Pick. 217; Doane v. Lockwood, 115 Ill. 490, and cases there cited; Pitt's Sons Mfg. Co. v. Poor, 7 Ill. App. 24.

The verdict should have been set aside by the court below, and it was error to overrule appellant's motion for a new trial and render judgment for appellee.    The judgment is reversed and cause remanded.

*Reversed and remanded.*