## Christina Johnson v. Prosperity L. & B. Ass'n et al.

1. MORTGAGE—*When a Deed Absolute, Becomes.*—A deed, although absolute in its terms as a conveyance in fee simple, becomes through a provision of defeasance, a mere mortgage; and it does not matter whether the defeasance is incorporated in the same instrument or in a separate instrument contemporaneously executed.

2. SAME—*Limitations Which Permit the Absolute Title to Vest Only upon the Happening of a Contingency.*—An agreement to reconvey upon stipulated terms may suffice of itself to make a deed absolute in its terms, in effect a mortgage; but a limitation which permits the absolute title to vest only upon the happening of the contingency of a failure to make the stipulated payments can hardly be construed to be other than a mortgage. The condition of defeasance need not be in the ordinary form to be operative.

3. SAME—*Usual Form of a Defeasance—Requisites.*—The usual words of a provision of defeasance are, that upon the payment of the debt or performance of the condition, the instrument shall be void; but any equivalent expression may be used, and if it appears from the whole instrument that it was intended as a security, although it contains no express provision that upon the fulfillment of the condition the instrument shall be void, it will be construed as a mortgage.

4. SAME—*When a Deed Absolute will be Treated as a Mortgage.*—Where it is clearly established that the parties to a deed absolute in form, intended it to operate as a mortgage to secure an indebtedness, the courts will treat it according to such intention.

5. DEEDS—*Take Effect as Delivered.*—Every deed or other instrument takes effect from its delivery, and its character by such delivery becomes fixed. It can not, thereafter, be one thing one day and another the next; if it is a mortgage when delivered, it will continue to be such until the right of redemption is extinguished in some of the modes recognized by law.

Johnson v. Prosperity L. & B. Ass'n.

6. REDEMPTION—*Parties Can Not Cut off the Right of Redemption.* —Nothing is more firmly established by the law of mortgages than that it is incompetent for parties, even by express stipulation, to cut off the right of redemption by making an instrument which is in legal effect a mortgage when delivered, an absolute deed upon some future contingency.

7. CONSTRUCTION OF CONTRACTS—*When to be Regarded as a Mortgage.*—The contract under consideration is contained ·in the statement of this case, which, and the deed therein referred to, is held by the court, when taken together, to constitute but one transaction, and that that transaction, by the terms of the writings, constitutes a mortgage.

8. EXTRINSIC EVIDENCE—*Competent to Show a Contract to be a Mortgage.*—It is competent to resort to extrinsic evidence to show that a deed absolute on its face, was, in reality, intended by the parties to be merely a mortgage; but it is not competent to resort to such evidence to show that a deed which is by its terms a mortgage was intended to operate as an absolute conveyance.

9. LIMITATIONS—*By Contract—Construction.*—The contract under consideration in this case is set forth in the statement of the case, and the court holds that the period limited by its terms within which the contracting party might repurchase the premises is to be reckoned from the date written in the instrument.

**Bill to Have a Written Contract Declared a Mortgage,** and for a right to redeem. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded with directions. Opinion filed March 25, 1901.

**Statement.**—This suit was begun by bill of complaint filed by appellant, and the relief prayed was that a warranty deed made by appellant to appellee John Brinkerhoff, dated January 20, 1897, together with a written contract, executed under seal at the same time with the warranty deed, be decreed to constitute a mortgage, and for a right to redeem. The deed is the ordinary form of warranty deed, in its terms an absolute conveyance in fee simple with covenants of warranty. The written contract, executed by the parties grantor and grantee to the warranty deed, is in its substantial parts as follows:

"This agreement, made and entered into this 20th day of January, A. D. 1897, by and between Christina Johnson, of the city of Chicago, in the county of Cook and State of Illinois, party of the first part, and John Brinkerhoff, of

Will county, in the State of Illinois, party of the second part,

Witnesseth, that whereas, Christina Johnson, party of the first part, for a valuable consideration to her in hand paid by second party, the receipt whereof is hereby acknowledged, has on the day of the date hereof sold and conveyed by warranty deed to the party of the second part the following described premises: (Describing land in Cook county, Illinois.)

And whereas, further, the said premises are incumbered with four (4) trust deeds or mortgages, two of which are held by the Prosperity Loan and Building Association of Chicago, and the said Christina Johnson has, and by these presents, for value received, hereby sells, assigns, transfers and sets over unto the said John Brinkerhoff the certificates of stock and pass books issued to her by the said association,

Therefore, in consideration of said covenant and assignment, it is hereby mutually agreed by and between said Christina Johnson and the said John Brinkerhoff:

First. That the said John Brinkerhoff shall pay unto the said Prosperity Loan and Building Association eight hundred and twenty-two ($822) dollars, being the amount now past due to said Prosperity Loan and Building Association from said Christina Johnson, and will continue to pay to said association during a term not exceeding two and one-half (2½) years from the date hereof.

Second. That said party will also pay or take care of an incumbrance (now past due) of about fourteen hundred ($1,400) dollars and interest thereon, and an incumbrance of about five hundred ($500) dollars now on said premises, and will secure and indemnify from loss one F. L. Salisbury as surety on the bond of Christina Johnson in the suit of Brauer v. Johnson.

Third. To enable said John Brinkerhoff to make said payments and care for said incumbrances, it is expressly agreed by and between the parties hereto, and the said Christina Johnson expressly authorizes and empowers the said John Brinkerhoff to borrow on said premises as security, and execute and deliver in his name, notes and a trust deed or mortgage in the usual form to secure the payment of twenty-five hundred ($2,500) dollars and interest thereon.

Fourth. Second party will pay all taxes and assessments now on or which may be levied upon said premises, on or before two and one-half (2½) years from the date.

Fifth. It is expressly agreed by the parties hereto that the second party shall have sole and exclusive possession, management and control of said premises and the leasing and the collections of the rents thereof, making repairs thereon, the execution of leases, and shall be entitled to a commission of five (5) per cent on the rents collected for the collection thereof.

Sixth. It is further agreed that the second party may lease the vacant lot fronting on Michigan avenue on a ground lease, at a fair rental value, for a term not exceeding five (5) years from May 1, 1897.

Seventh. It is further agreed that the second party shall receive from the rents to be collected as additional compensation for his services the sum of two hundred and fifty ($250) dollars, and in addition thereto shall pay from the income of said profit one hundred ($100) dollars attorney's fees to F. L. Salisbury.

Eighth. It is further agreed that once each year second party will, upon demand, deliver to first party a statement of all rents collected by him and moneys by him expended and laid out.

Ninth. It is further agreed that this instrument is a contract by and between the parties hereto by which the second party agrees to sell to the first party the premises above described at any time on or before two and one-half ($2\frac{1}{2}$) years hereafter, for the following considerations, viz.:

That first party shall pay to second party each and every sum of money by him expended and laid out in and about said premises and incumbrances thereon, including therein all money by second party paid and by him paid to the Prosperity Loan and Building Association; also the third and fourth incumbrances on said premises, two hundred and fifty ($250) dollars as aforesaid, and the semi-annual interest on each and every item by second party paid out and expended from the date of said payment at the rate of seven (7) per cent per annum until paid by the first party. Upon the payment by first party of all moneys laid out and expended by second party with interest thereon as aforesaid, said second party will on or before two and one-half ($2\frac{1}{2}$) years from the date hereof execute and deliver to first party a deed of said premises free and clear of all liens or incumbrances by or through him placed thereon except the twenty-five hundred ($2,500) dollar mortgage or trust deed hereinbefore mentioned, and will also assign and transfer to first party or her order all of

said second party's interest in and to the said certificates and pass books of said association.

Tenth. It is expressly understood and agreed by the parties hereto that should said first party fail or refuse to pay to said party the said two hundred and fifty ($250) dollars and all other sums of money by him expended, paid and laid out as hereinbefore provided, less net rents entered on or before two and one-half ($2\frac{1}{2}$) years from the date hereof, then the title to said premises, certificates of stock and profits in said association shall vest and become absolute in second party, and first party shall have no further right or interest in said premises and certificates of stock or anything arising or growing out therefrom.

Time is of the essence of this contract and of all the conditions thereof. This contract is binding upon the heirs, executors and administrators of the parties hereto."

This contract was signed and sealed by the appellant and appellees at the same time of the execution and delivery of the warranty deed.

·The following are facts undisputed :

That on and before January 20, 1897, the date of the warranty deed and contract to appellee John Brinkerhoff, Christina Johnson, appellant, was the owner of the property in controversy; that on or about October, 1889, appellant borrowed $9,000 from the Prosperity Loan and Building Association on her property, and to secure the payment of the same executed two trust deeds to them, one for $7,500 and one for $1,500; that on October 4, 1895, appellant executed a note for $1,335, due one year after date, and to secure the same executed a trust deed on her said property, dated October 4, 1895, to F. L. Salisbury, trustee, which said trust deed was recorded in the recorder's office of Cook county, and which is the incumbrance of about $1,400 mentioned in the second covenant of the contract; that Clarence E. Brinkerhoff has always been the owner of the said note and trust deed; that after the said $1,335 note became due the said C. E. Brinkerhoff demanded payment, and negotiations were pending between appellant and one Hilstram for a loan to pay off all the indebtedness against the property, and that the same failed, and after

the said negotiations failed, the contract, as set forth, was entered into between appellant and appellee, and at the same time appellant executed the warranty deed to appellee, conveying her said property to him; that the said warranty deed and contract, although dated January 20, 1897, were in fact not executed and delivered until January 27, 1897, and were executed and delivered at one and the same time, and as one and the same transaction; that the bill of complaint was filed within the two and one-half years limited in the contract, from January 27, 1897, but after the two and one-half years from January 20, 1897; that the incumbrance of about $500 mentioned in the second covenant of the contract was a trust deed executed by appellant securing a note for $500, which was given to indemnify from loss F. L. Salisbury, as surety on a bond of appellant, and that the appellee paid $183.45 on account of said liability, which represents the actual amount of said incumbrance; that after the making of the said contract and warranty deed between the appellant and appellee, the said C. E. Brinkerhoff, having still possession of the said note for $1,335 owned by him and the trust deed securing the same, caused them to be marked canceled by F. L. Salisbury, trustee, but that he continued to retain possession of the said canceled trust deed and note and has never delivered them to the complainant; that also after the execution of the said contract and warranty deed the said F. L. Salisbury, trustee, signed and acknowledged a release of the said last mentioned trust deed securing the said note, and delivered the same to C. E. Brinkerhoff, but that said release deed, which was dated February 9, 1897, has never been delivered to the complainant nor filed for record in this county, but has also remained in the possession of C. E. Brinkerhoff; that as between appellee John Brinkerhoff and C. E. Brinkerhoff, his son, the said C. E. Brinkerhoff was the real party in interest, but that this fact was unknown to appellant, who supposed that she was dealing with appellee in his own right and interest.

Appellee answered the bill of complaint, averring that

the conveyance to him was in fee simple absolute, and not a mortgage, and that the option given appellant to purchase back had expired by its own limitation.

The court referred the cause, standing upon bill, answer and replication, to a master in chancery to hear evidence and report. Upon the coming in of the master's report the chancellor entered a decree in conformity with the recommendations of the master, dismissing the bill for want of equity.

From that decree this appeal is prosecuted.

HAYNIE R. PEARSON and CHARLES A. KLOTZ, attorneys for appellant.

M. MARSO, attorney for appellee John Brinkerhoff.

MR. JUSTICE SEARS delivered the opinion of the court.

Counsel for appellant contend, first, that the appellant is entitled to a redemption of the property under the terms of the contract, irrespective of the nature of the transaction, because the contract, having been actually executed and delivered upon January 27, 1897, the period of two and one-half years, within which appellant might redeem or purchase back, is to be calculated from that date, and not from the date of the deed and contract, viz., January 20, 1897; and second, that the deed and contract, taken together, constitute but one transaction, and that transaction, by the terms of the writings, constitutes a mortgage.

We are of opinion that the first contention of appellant's counsel can not be sustained; for while January 27th is shown by the evidence to have been the actual date of execution and delivery of the deed and contract, yet the period limited by the terms of the contract, viz., two and one-half years, within which appellant might buy back, is to be reckoned from the date written in the instrument. 2 Parsons on Contracts (6th Ed.), p. 664; Abrams v. Pomeroy, 13 Ill. 133; Peoria Co. v. Elder, 165 Ill. 55; Bement v. Trenton Co., 32 N. J. L. 513; Goldsmith v. Guild, 10 Allen, 239; Luce v. Shoff, 70 Ind. 152.

Johnson v. Prosperity L. & B. Ass'n.

This bill having been filed after the expiration of the two and one-half years limited by the terms of the contract, we are of opinion that the right to repurchase had expired, if the appellee had become absolute owner by the conveyance, with contract for repurchase, and was not a mere mortgagee.

We are brought, then, to a consideration of the second contention of appellant, viz., that the entire transaction constituted appellee a mere mortgagee and not an absolute owner of the fee, and that appellant had not merely a right to repurchase under the terms of the written contract, but the right of redemption which the law of this State accords to a mortgagor who has not been foreclosed by judicial proceeding.

We are of the opinion that this contention is sound and must be sustained.    There is no dispute but that the deed and the written contract were parts of one transaction and must be read together in determining the nature of the conveyance.    Freer v. Lake, 115 Ill. 662.

A deed otherwise absolute in its terms as a conveyance in fee simple becomes, through a defeasance provision, a mere mortgage, and it does not matter whether the defeasance provision is incorporated in the same instrument or in a separate instrument contemporaneously executed.    Preschbaker v. Feaman, 32 Ill. 475; Woodward v. Pickett, 8 Gray, 617.

Here the written contract, executed by the parties under seal, is admitted to be part of the same transaction.    Hence we have to determine from its terms if it makes the deed a mortgage.    We think that it does.    The tenth clause, while not a formal condition of defeasance, is nevertheless a limitation upon the effect of the deed as an absolute conveyance, in that it provides that it is upon the refusal or failure of appellant to make payments specified, that the title " shall vest and become absolute " in appellee.    An agreement to reconvey upon stipulated terms may not suffice of itself to make a deed absolute in terms in effect a mortgage; but a limitation which permits the absolute title to vest

only upon the happening of the contingency of a failure to pay, could hardly be construed to be other than a mortgage. The defeasance condition of a mortgage need not be in the ordinary form of a defeasance proviso in order to be operative.　1 Jones on Mortgages (2d Ed.), Sec. 60; Lanfair v. Lanfair, 18 Pick. 299; Steele v. Steele, 4 Allen, 417; Skinner v. Cox, 4 Dev. (N. C.) 59.

In Jones on Mortgages the author says:

"The usual words of the proviso are, that upon the payment of the debt or performance of the duty named, 'then this deed shall be void.'　But any equivalent expression may be used; and in fact if it appears from the whole instrument that it was intended as a security, although there be no express provision that upon the fulfillment of the condition the deed shall be void, it is a mortgage.　The substance and not the form of expression is chiefly to be regarded,"etc.

Here the proviso in effect limits the vesting of absolute title to the happening of a future failure of appellant to make payments specified.

Aside from the other clauses and provisions of the contract, consistent with a conveyance by mortgage, and not as consistent with a conveyance absolute, we regard this one provision contained in the tenth clause as making the two sealed instruments, taken together, a mortgage.　The fifth clause of the contract, providing that the grantee in the warranty deed shall be permitted to have "sole and exclusive possession," is inconsistent with the theory that he had already acquired that right by absolute conveyance.

But if the contract be treated merely as evidence extrinsic of the deed (though we are of opinion that it is not extrinsic, but is a part of the deed), yet it affords evidence conclusive in this case of the nature of the transaction.

The statute of this State provides:

"Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage."　Sec. 12, Chap. 95, R. S.

And the decisions of our Supreme Court hold uniformly that where it is clearly established that the parties to a deed absolute in form have intended that it shall operate

only as a mortgage to secure advances or a debt, then the courts should treat it as a mortgage.   Rubo v. Bennett, 85 Ill. App. 473, and cases therein cited.

And although it be apparently the intent of the parties to thus make a mortgage which will cut off the right of the mortgagor to redeem, yet the courts hold that if it appear to have been intended as a mortgage, the right of redemption can not be thus relinquished.

In Bearss v. Ford, 108 Ill. 16, the Supreme Court said:

" The parties may have intended, and doubtless did intend, that if the premises were not redeemed before the 1st of July, 1897, it should then become so (absolute) in order to avoid the expenses of a foreclosure.   But it is evident that parties can not by mere agreement change the law of the land. (Dicey on Parties, 37, 38, side page.)   Every deed or other instrument takes effect from its delivery, and its character thereby becomes at once fixed.   It can not, after such delivery, be one thing to-day and another to-morrow. If a mortgage when delivered, it continues to be such until the right of redemption is barred by some of the modes recognized by law.   Hence, nothing is more firmly established in the law of mortgages than that it is not competent for the parties, even by express stipulation, to cut off the right of redemption; and to permit them to make such an instrument an absolute deed upon some future contingency would simply be cutting off the right of redemption, which, as we have just seen, can not be done.   2 Jones on Mortgages, Sec. 1039, *et seq.*"

Much of the argument of counsel is directed to the question of whether the debt due from appellant to C. E. Brinkerhoff was in fact extinguished by the act of the parties in making the deed and contract.   We do not view this question as controlling.

It is true that where a deed is made upon the consideration of a pre-existing debt of grantor to grantee, and it is afterward claimed that the deed, though absolute in terms, is in effect a mortgage, the fact that the pre-existing debt is extinguished is taken as conclusive of the absolute nature of the conveyance; it being said in such cases that without a subsisting debt there can be nothing for the deed to operate upon as a mortgage.   Freer v. Lake, *supra.*

But here it was John Brinkerhoff, the appellee, not C. E. Brinkerhoff, the creditor, with whom appellant was dealing. It is true that in fact appellee was acting for C. E. Brinkerhoff. But appellant was not aware of this fact, and her action must be measured by the facts as they existed between her and appellee and by the terms of their contract. It was a part of the very advances which appellee was to make for appellant that he should pay C. E. Brinkerhoff the amount of his claim. The second clause of the contract so provides. Therefore, the extinguishment of the C. E. Brinkerhoff liability was a part of the new liability which was created by the advances made by appellee, and to secure which the deed and contract were given. However, it appears from the evidence that the promissory note by appellant and the trust deed securing the same, which evidenced the debt of appellant to C. E. Brinkerhoff, were not delivered to appellant, but were retained by the Brinkerhoffs and were not canceled until some time after the execution and delivery of the deed in question. A release of this trust deed was executed some time after the 27th of January, 1897, and was not recorded at all nor delivered to appellant, but was retained by the Brinkerhoffs. The very fact of this retention of the evidences of indebtedness and failure to at once cancel and deliver them up to appellant, would afford strong proof that the instruments in question constituted a mortgage, if such extrinsic evidence need be looked to for the purpose of determining their character.

Taking all the evidence into consideration, we are of opinion that the parties to the deed in question intended it to operate as a mortgage only. But if the two sealed instruments, the deed and accompanying contract together, stamp the deed as a mortgage, as we think they do, then extrinsic evidence would hardly be looked to for the purpose of determining its character. While it is allowable to resort to extrinsic evidence to determine that a deed absolute on its face is in reality intended by the parties to be merely a mortgage, the converse does not obtain, viz., that

resort may be had to extrinsic evidence to establish that a deed which is by its terms a mortgage is intended to operate as an absolute conveyance.

The decree is reversed and the cause remanded, with directions to the Circuit Court to enter a decree according to the prayer of the bill, allowing appellant to redeem, and to that end to take an accounting of the amount due to appellee. Reversed and remanded, with directions.